NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

LOUISE RHINEHART, PETITIONER, v. MICHAEL STILL-
MAN, RESPONDENT.

Injury to Hip of Employe—Question Whether the Employment
was Casual—Upon Examination of Facts, Held to be Regu-
lar—At Time of Injury Respondent Wanted to Call Doctor,
Petitioner's Doctor, but She Declined, Asking Instead to be
Taken Home—Respondent Therefore Furnished No Medical
Assistance—Petitioner Treated by Physician, but Injury Be-
came Worse—Held, Entitled to Compensation and Payment
of Medical Bills, Also Opportunity for Further Hearing in
Regard to Permanent Injury Resulting From Possible Short-
ening of Leg.

For the petitioner, *Irving W. Vanderhoff.*

For the respondent, *Hopkins & Herr.*

FINDING OF FACTS AND DETERMINATION.

Mrs. Michael Stillman, wife of respondent, desired to
employ someone in her home while she was away to have
an operation for appendicitis. On or about October 19th,
1925, Mrs. Stillman called a friend of hers, a Mrs. Bessie
B. Ryan, a witness for respondent. She asked Mrs. Ryan
if Mrs. Ryan knew anyone who could help her out for a
couple of weeks, and Mrs. Ryan said she thought she did.
Mrs. Ryan called up the petitioner on the telephone, and
asked her if she would like to have work for a couple of
weeks to help Mrs. Stillman out, who was sick, and Mrs.
Rhinehart stated that she would.

Mrs. Ryan testified that Mrs. Rhinehart had worked for
her for years, sometimes by the day, sometimes by the week,
and that Mrs. Rhinehart had done sewing for her once a week
for a good many years. Mrs. Ryan also testified that Mrs.
Rhinehart had worked for other people in the vicinity,

namely, a Mrs. Pond, a Mrs. Solomons and a Mrs. Baker. This is all taken from the testimony of witness for respondent.

Mrs. Stillman testified that all the arrangements of the hiring were made with Mrs. Rhinehart by above witness. Mrs. Stillman testified that Mrs. Rhinehart on the first day of her work assisted in ripping petticoats. This corresponds with the petitioner's statement that she was a seamstress. In addition, Mrs. Stillman stated that Mrs. Rhinehart helped in the preparation of a meal. This corresponds with Mrs. Ryan's testimony that Mrs. Rhinehart would do any kind of work. The contention of counsel for respondent is that this was a casual employment. Counsel for petitioner and counsel for respondent both cite the case of *Hubbe* v. *Lynch,* 36 *N. J. L. J.* 87. "Taking into consideration all the circumstances attending the contract of hiring and the nature of the services in each case," as suggested by Judge Martin in this case, it would appear that the employment in this case is regular, not casual.

Doctor Pinneo, a witness for petitioner, testified that petitioner would be under treatment for at least eight months from the time when he began treatment, which was on November 23d, 1925.

Witnesses for respondent testified that immediately after the accident they offered to telephone to Doctor Pinneo, the petitioner's family physician, to call him for treatment of Mrs. Rhinehart, or to call any other doctor she wished, or to take her to a hospital, but petitioner would not wait and insisted on being taken home immediately, and that neither the petitioner, nor anyone for her, ever requested the respondent to furnish her with medical care or attention; that they did not hear from petitioner, or anyone on her behalf, until they received a letter from petitioner's counsel. Petitioner offered no evidence to contradict this.

The respondents did not provide any medical services.

The daughter of petitioner on the day of the accident attempted to call the same doctor, Dr. Pinneo, but the doctor was out of the city and could not be secured that day. In

the interval, and until November 23d, 1925, petitioner was under the care of a Doctor Hahren, who did nothing for petitioner except to advise her to rub liniment on her hip.

Dr. Twinch, a witness for the respondents, testified that had petitioner's hip been properly set and put in a plaster cast immediately after the accident, she would probably have entirely recovered at the day of the hearing. No evidence was offered on behalf of petitioner to contradict this.

Later, and on or about November 23d, 1925, Doctor Pinneo began treatment, and had continued treatment up until the time of the hearing, and expected to continue further treatment. Doctor Pinneo testified that the charge for his services for treatment was two hundred ($200) dollars to date; that his charge for testifying was fifty ($50) dollars. The testimony shows that the hospital bills were one hundred and forty-eight dollars and seventy-five cents ($148.75), plus twelve ($12) dollars for a special nurse. Mrs. Rhinehart testified that she had expended thirty-five ($35) dollars for a brace; four dollars and ninety-five ($4.95) cents for shoes for brace; fifteen ($15) dollars for X-ray; two dollars and fifty ($2.50) cents for crutches. Daughter of petitioner testified that she had expended twenty-two ($22) dollars for drugs and sick-room supplies used in the treatment of petitioner. The total of these medical charges is four hundred and seventy-one dollars and twenty ($471.20) cents. There is testimony on the part of the respondent that the wages were fifteen ($15) dollars per week, and on the part of the petitioner that the wages were seventeen ($17) dollars per week. I find that the wages were fifteen ($15) dollars per week.

It is therefore ordered on this 7th day of July, 1926, that judgment be entered in favor of the petitioner for temporary disability from October 27th, 1925, to November 23d, 1925, and for eight months from November 23d, 1925, a period of thirty-eight and three-sevenths (38 3/7) weeks, at the rate of ten ($10) dollars per week, making three hundred and eighty-four dollars and twenty-nine cents ($384.29). It is further ordered that the medical expenses in the amount of

four hundred and seventy-one dollars and twenty cents ($471.20), be charged against respondent.

Doctor Twinch, a witness for respondent, testified that there was two inches shortening in petitioner's limb. Opportunity will therefore be given petitioner for further hearing and further determination of the temporary and permanent disability and further medical expense, following termination of the thirty-eight and three-sevenths (38 3/7) weeks of temporary disability.

Counsel for petitioner is allowed the sum of two hundred ($200) dollars for attorney's fees, to be assessed against the respondent.

HARRY J. GOAS,
*Deputy Commissioner.*